LAWRENCE P. RAMIREZ (State Bar No. 141550)
LINDA KENY (State Bar No. 187013)
**THE LITIGATION LAW GROUP**
111 North Market Street, Suite 300
San Jose, CA 95113
Telephone: 408 971-1119   Facsimile: 408 971-1129
Email:   lpramirez@thellg.com; lindakeny@thellg.com

Attorneys for Plaintiff, GOLDEN STATE CONCESSIONS, LLC

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| GOLDEN STATE CONCESSIONS, LLC, a California Limited Liability Company, Formerly Known as PACIFIC GATEWAY CONCESSIONS, LLC<br><br>PLAINTIFF,<br><br>V.<br><br>WELLS FARGO BANK, N.A. and DOES 1 through 10, INCLUSIVE,<br><br>DEFENDANTS. | Case No:<br><br>**COMPLAINT FOR:**<br><br>1. **VIOLATION OF UCC ARTICLE 4A-207**<br>2. **NEGLIGENCE**<br>3. **BREACH OF FIDUCIARY DUTY**<br>4. **BREACH OF CONTRACT**<br><br>DEMAND FOR JURY TRIAL |

COMES NOW, Plaintiff GOLDEN STATE CONCESSIONS, LLC ("Golden State" or "Plaintiff") formerly known as PACIFIC GATEWAY CONCESSIONS, LLC by and through its attorneys of record, for its causes of action against Defendants WELLS FARGO BANK, N.A. ("Wells Fargo") and Does 1 through 10 inclusive, and alleges the following:

Complaint - 1

# PARTIES

1. At all relevant times alleged in this complaint herein, Plaintiff GOLDEN STATE CONCESSIONS, LLC, ("Golden State" or "Plaintiff") formerly known as PACIFIC GATEWAY CONCESSIONS, LLC was a corporation duly organized under the laws of California with its principal place of business in San Francisco, California.

2. Plaintiff is informed, believes and thereon alleges that Defendant WELLS FARGO BANK, N.A. ("Wells Fargo") is a national banking association which provides a range of banking services in several states including California, and is headquartered in San Francisco, California. Wells Fargo is also a corporation duly licensed and registered to do business in the State of California.

3. On information and belief, at all times mentioned herein, Defendants and each of them were the agents, partners, shareholders, members, principals, employees, employers, joint venturers, directors, managers or supervisors of each of the other Defendants, and in doing the acts and omissions hereinafter alleged, were acting within the purposes, course and scope of their agency, partnership, shareholder, joint venture, management or supervisorial role and/or with the authority, permission and consent of the other Defendants.

4. Any allegations about acts of any corporate or other defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

5. The true names and capacities, whether individual, corporate, partnership, associate,

or otherwise, of the Defendants named herein as DOES 1 through 10, inclusive, are presently unknown to Plaintiff, who therefore sues these Defendants by fictitious names. Plaintiff will seek leave of Court to amend this Complaint to allege their true names and capacities as soon as they are ascertained. Plaintiff further alleges, on information and belief, that each of these fictitiously named Defendants is responsible in some manner for the acts alleged herein.

6. Plaintiff believes and is informed, and on that basis alleges, that Defendants were in some manner legally responsible for the unlawful actions, unlawful policies, and unlawful practices, complained of herein.

**VENUE AND JURISDICTION**

7. This Court has subject matter jurisdiction over Plaintiff's claims as conferred by Uniform Commercial Code Article 4A relating to funds transfers.  This Court has supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this District pursuant to §27 of the 1934 Act.  All of the acts giving rise to the allegations were made in this District. Venue is proper in this court because injury and damage to Plaintiff occurred in this area and the practices alleged in this Complaint were committed in this area.

**GENERAL ALLEGATIONS AND FACTUAL BACKGROUND:**

9. At all times relevant herein, Defendant WELLS FARGO did specialize in and was an expert in banking, online banking, and the safekeeping of money.  At all times relevant herein, Plaintiff GOLDEN STATE was a customer of Defendant Wells Fargo and used Wells Fargo's banking services for its business operations.

10. At all times relevant therein, Plaintiff GOLDEN STATE was in the business of

providing concession services for airports around the country, including locations at the San Francisco International Airport.  In its role as concessionaire, Golden State made purchases with, and engaged in transactions with food and retail providers to obtain branded products for its airport locations.

11.     Golden State had a long history with vendor See's Candies. Traditionally, Golden State made payment to See's Candies via check to a Bank of America account.  However, during previous holiday seasons, Golden State had wired funds to See's Candies due to the high volume of purchases.

12.     On December 7th, 2019, a fraudulent party sent an email to a member of Golden State's Accounts Payable team.  The email was included in a chain of legitimate emails from See's Candies.  The fraudulent party impersonated a See's Candies' employee known to Golden State and indicated that See's was no longer accepting checks for amounts over $20,000.

13.     The imposter requested that Golden State wire funds to See's to keep See's from placing the Golden State account on "credit hold".  The imposter also requested a change in the See's banking information from its Bank of America Account to a new Wells Fargo Account (account number 8999384541) and included a routing number. As the purported See's employee was someone that Golden State regularly emailed with regarding payments, Golden State complied with the instructions stated in the emails.

14.     Accordingly, on four separate occasions, Golden State initiated wire transfers from its Wells Fargo bank account to the Wells Fargo account (account number ending in 4541) listed in the instructions. Specifically, the following funds were wired on the following dates:

- 12/10/18: $63,936.16

Complaint - 4

- 12/17/18: $96,167.19
- 12/27/18: $35,886.91
- 1/2/19: $80,074.25

The total amount wired to the Wells Fargo account ending in 4541 was $276,064.51.

15. On or about January 9th, 2019, Golden State was contacted by See's Candies' financial division and told that See's had not received any payment from Golden State. It is then that Golden State realized that it was the victim of a fraudulent scheme involving unauthorized access and hacking into the email accounts of parties to the transaction. Golden State had received fraudulent wire instructions from a fake email account and payment had never reached See's Candies.

16. Immediately upon learning of the theft, on January 9th, 2019, Golden State filed a felony police report with the South San Francisco Police Department with all the relevant facts and details. Golden State also immediately contacted Wells Fargo and See's Candies to open up investigations regarding the fraud. On February 5th, 2019, a report with the Federal Bureau of Investigation was also filed.

17. Subsequent to Golden State and See's Candies' express demands to have the matter investigated, Wells Fargo's financial investigation team revealed that the funds had been wired to a Wells Fargo US Business account in the name of W Specialty Group, located in Arizona. W Specialty Group was not known to Golden State or See's Candies but did show up in Wells Fargo's internal systems as the customer of record with the account number ending in 4541 sent in the fraudulent wiring instructions.

18. Golden State is informed and believes and thereon alleges that Wells Fargo allows

Complaint - 5

its business account customers to receive wire transfers of funds. In receiving such funds, Golden State is informed and believes and thereon alleges that Wells Fargo is obligated to, and does, confirm that funds transferred to a Wells Fargo business account via wire transfer are payable to an account held by the actual person or entity the wire instructions set out as the beneficiary. As such when funds are wired to a Wells Fargo business account, Wells Fargo has actual knowledge in the event the account number the funds are wired to is not in the name of the beneficiary identified in the wire transfer instructions and should not allow the funds to be paid to the account holder unless and until the wire is confirmed as not fraudulent.

19.   Wells Fargo, based on its own internal procedures for opening of accounts by its customers, knew that the account ending in 4541 was not See's Candies but instead, W Specialty Group. That information was present in its internal systems and records and confirmed by its own financial investigator.

20.   At the time of receiving and wrongfully accepting the wire transfers from Golden State and thereafter, Wells Fargo knew that the name and account number on the wire instructions referred to different parties, and indeed that there was no point of similarity, resemblance or any connection whatsoever between "See's Candies", the stated intended beneficiary, and "W Specialty Group."

21.   Despite having actual knowledge that the owner of Wells Fargo account number ending in 4541 was in fact not See's Candies, Wells Fargo accepted the wire transfer from Golden State. Wells Fargo received and improperly accepted $276,064.51 wired from Golden State into the account of W Specialty Group notwithstanding the apparent discrepancy in its own internal systems between the intended beneficiary and the actual account holder of the funds.

22. At the time of the first transfer of funds made on December 10th, 2019, Wells Fargo knew that the party which was being wired the funds (W Specialty Group) was not the proper and intended recipient of the funds sent from Golden State. Wells Fargo, as both the originating and recipient bank, knew that the intended beneficiary was not the actual beneficiary as confirmed in its own internal system records.

23. Wells Fargo took no action to restrict, not just one, but four separate fraudulent transactions, or take any action to protect Golden State or to comply with its obligations under federal regulations, including regulations relating to "know your customer", anti-money laundering, and the handling of suspicious transactions although Wells Fargo had actual knowledge of the certainty of error and the likelihood of fraud in the wire instructions from Golden State.

24. Wells Fargo's actions evidence its responsibility in the theft. It did credit Golden State in the amount of $15,113.66 on or about January 11, 2019 in partial credit for the second wire transfer.

25. However, on February 4th, 2019, Wells Fargo informed Golden State that it would not accept responsibility for the remainder of Golden State's stolen funds even though its own investigation and internal systems showed the discrepancy between the name of the intended beneficiary (See's Candies) and the actual beneficiary ("W Specialty Group").

26. Wells Fargo has also refused to provide additional information that would assist Golden State in recovering its funds, including detailed information regarding W Specialty Group and the fraudulent account. Wells Fargo has also failed to advise Golden State as to the existence, amount and whereabouts of its funds even though Golden State was its customer at the

Complaint - 7

time of the events alleged in this complaint.

27. Because of the above, Golden State has suffered damages including the loss of the wired funds and other damages relating thereto, such as interest and harm due to the effect of the loss on the underlying business transaction.

28. Golden State has made demand on Wells Fargo for the return of the wired funds, but Wells Fargo has failed to respond to the demand.

**FIRST CAUSE OF ACTION:**
**Violation of Uniform Commercial Code Article 4A, §4A-207**

29. Golden State hereby incorporates the allegations set forth heretofore, as though fully alleged herein.

30. Uniform Commercial Code, Article 4A, Section 4A-207 governs wire funds transactions in which a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons.

31. Pursuant to Uniform Commercial Code section 4A-207(b)(2), if the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

32. Based upon its policies and procedures as set forth herein in accepting and releasing the wire transfers made by Golden State to Wells Fargo's account holder, Wells Fargo knew that the information regarding the named beneficiary and account number of the wire transfers did not

Complaint - 8

match, as confirmed by its own internal records and investigation. Despite knowing that it was disbursing the funds to someone other than the intended beneficiary, Wells Fargo did so anyway.

33.     Wells Fargo's conduct of releasing the funds from Golden State's wire transfers to a beneficiary other than the known intended beneficiary as set forth in the express terms of the wire instructions that identified the intended beneficiary as See's Candies' violated the Uniform Commercial Code, Article 4A, Section 4A-207 (b)(2) as Wells Fargo had actual knowledge that the name and number identified different persons. As a result, acceptance of the order could not happen.

34.     As a direct and proximate result of the violation of the Uniform Commercial Code Section 4A-207 alleged herein, Plaintiff has suffered actual and compensatory damages in excess of the sum of $276,064.51, subject to proof at the time of trial.

## SECOND CAUSE OF ACTION:
### Negligence

35.     Golden State hereby incorporates the allegations set forth heretofore as though fully alleged herein.

36.     Golden State exercised ordinary care with regard to the wire transfers. Upon discovery of the fraud, Golden State immediately contacted Wells Fargo to give notice of the fraud and to demand refund of its funds and an investigation into the fraud.

37.     Wells Fargo owed a duty to Golden State to prevent the withdrawal of funds from its account as it had actual notice that the intended beneficiary and the actual beneficiary were not one and the same from its own internal records.

38.     Wells Fargo acted negligently and with lack of care in not one but four separate

transactions wherein, although it had actual knowledge of the discrepancy, did not stop further withdrawals and did not notify Golden State of its knowledge.

39. Wells Fargo has a duty to assist its customers which have been defrauded to recover its funds. Wells Fargo acted negligently after the fraud was perpetuated by among other things, not assisting Golden State with all the information and assistance needed regarding the actual account holder's details to recover Golden State's funds and by not informing Golden State regarding the procedures and processes for obtaining return of the fraudulently transferred funds.

40. Wells Fargo breached its duty by negligently failing and/or refusing to provide necessary information so that its own victimized customer may be made whole.

41. As a direct and proximate result of Wells Fargo's negligence as alleged herein, Golden State has suffered actual and compensatory damages in excess of the sum of $276,784.23, subject to proof at the time of trial.

### THIRD CAUSE OF ACTION:
**Breach of Fiduciary Duty**

42. Golden State hereby incorporates the allegations set forth heretofore as though fully alleged herein.

43. Based on the circumstances of Golden State's longstanding banking relationship of trust and confidence with Wells Fargo, the parties extended their relationship beyond the limits of the contractual obligations under the bank's customer agreements to a relationship founded upon trust and confidence.

44. Wells Fargo is responsible for exercising ordinary care and complying with its

customer Account Agreements and other federal and state law obligations.

45. Wells Fargo is responsible for exercising ordinary care when processing a wire transfer for its customers.

46. Wells Fargo breached its fiduciary duty owed to Golden State by failing to exercise ordinary care when processing the wire transfer by failing to use Wells Fargo's records, resources, expertise and internal databases to determine whether the funds were going to the intended beneficiary (also an account holder of Wells Fargo) or whether they were in fact fraudulent.

47. Wells Fargo failed to properly implement its fraud targeting and inspection system to determine whether the wire transfers were fraudulent and failed to engage in safe and sound banking practices.

48. As a direct and proximate result of Wells Fargo's breach of fiduciary duty as alleged herein, Golden State has suffered actual and compensatory damages in excess of the sum of $276,064.51, subject to proof at the time of trial.

### FOURTH CAUSE OF ACTION
### Breach of Contract

49. Golden State hereby incorporates the allegations set forth heretofore as though fully alleged herein.

50. Golden State's customer account with Wells Fargo constitutes a contract whereby Wells Fargo executes Golden State's instructions on payment and processing of wire transfers. Wells Fargo breached its contract with Golden State by paying someone other than intended by Golden State even though Wells Fargo had actual knowledge that the intended beneficiary was not the actual beneficiary of the wired funds.

Complaint - 11

51. Additionally, Golden State's wire transfer, once accepted and executed by Wells Fargo constituted a written contract between the plaintiff and Wells Fargo, the essence of which was that Wells Fargo would pay the funds to See's Candies. Wells Fargo breached its contract with the Golden State by paying the funds to someone other than See's Candies. causing Golden State to suffer damage, both financially and reputationally.

52. Golden State has performed all of the terms and conditions of the contract on its part to be performed.

53. As a direct and proximate result of Wells Fargo's breach of contract, as alleged herein, Golden State has suffered actual and compensatory damages in excess of the sum of $276,064.51, subject to proof at the time of trial.

**PRAYER FOR RELIEF:**

WHEREFORE, Golden State prays for judgment against the Defendants and each of them, jointly and severally, as follows:

1. General and compensatory damages in the minimum amount of $276,064.51 according to proof;

2. Damages for investigation, expert, and consultant fees and costs;

3. Reasonable attorney's fees, costs and other expenditures;

4. Prejudgment interest;

///

///

///

5. For such other and further relief as the Court may deem proper.

Respectfully Submitted,

DATED:  December 31, 2020

                                THE LITIGATION LAW GROUP

                                <u>s/s Linda Keny</u>
                                Lawrence P. Ramirez
                                Linda Keny
                                ATTORNEYS FOR PLAINTIFF,
                                GOLDEN STATE CONCESSIONS, LLC